IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 28, 2012

**STATE OF TENNESSEE v. MATTHEW T. McGEE**

**Appeal from the Circuit Court for Sevier County**
**No. AP-08-007    Richard R. Vance, Judge**

———

**No. E2011-01756-CCA-R3-CD - Filed September 13, 2012**

———

The Defendant, Matthew T. McGee, pleaded guilty to driving under the influence, first offense, a Class A misdemeanor. See T.C.A. § 55-10-401 (2008). He was sentenced to an effective sentence of eleven months and twenty-nine days with forty-five days' confinement and the remainder on probation. The Defendant's plea agreement reserved two certified questions of law regarding the legality of the traffic stop. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL, and CAMILLE R. MCMULLEN, JJ., joined.

Bryce W. McKenzie (on appeal) and Joseph A. Baker (at the suppression hearing), Sevierville, Tennessee, for the appellant, Matthew T. McGee.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; James B. (Jimmy) Dunn, District Attorney General; and Gregory C. Eshbaugh, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to a traffic stop that resulted in the Defendant's arrest for driving under the influence. The Defendant filed a motion to suppress the evidence obtained as a result of the traffic stop, arguing that the police lacked reasonable suspicion to initiate the traffic stop. At the suppression hearing, Pigeon Forge Police Officer Adam Malone testified that on February 17, 2008, he received a radio call telling him to be on the lookout for a white Lexus with a Tennessee dealership license plate traveling northbound from Gatlinburg.

He said that the driver was suspected of being intoxicated and that the car was moving "erratically." He said that at about 6:49 p.m., he saw a white Lexus with a dealership license plate traveling northbound on Dolly Parton Parkway. He said that he followed behind the car for a while, that he saw the car cross the "fog line" on the left side of the road twice, and that the car "swerv[ed]" into the middle lane and returned to the left lane without signaling. He said that based on the car's movements and the information contained in the radio call, he initiated a traffic stop. He identified the Defendant as the driver of the car.

On cross-examination, Officer Malone testified that the radio call did not state that the driver of the Lexus was suspected of being intoxicated, only that the car was moving erratically. He agreed that the police dispatch officer did not know if the driver was intoxicated. He said he followed behind the Defendant for about one-quarter to one-half mile. He agreed the car did not weave, straddle across the lines, or drift within the lane. He did not recall the car swerving but said he remembered the Defendant changing lanes. He said the car did not strike or come close to striking another car on the road.

Officer Malone testified that crossing the fog line twice was a "minor traffic violation" and was not "necessarily unsafe." He agreed that the car did not enter the center lane completely. Although he was not sure, he believed the car only drove "on top of the broken white line." He said that the car traveled at a safe speed, that all lights worked properly on the car, and that the car kept a safe distance from other cars on the road. On redirect examination, Officer Malone testified that he stopped the Defendant because he wanted to ensure the Defendant was capable of driving after receiving a report of erratic driving and seeing the car cross the fog line. On recross-examination, Officer Malone testified that solely based on the Defendant's driving, he believed the Defendant was "okay."

The trial court denied the motion to suppress and found that based on the information provided in the radio call about the car's description and erratic driving and Officer Malone's observations of the car, there was reasonable suspicion to initiate a traffic stop. The court found that Officer Malone "acted reasonably" by ensuring that the Defendant and other drivers on the road were safe. The Defendant pleaded guilty but reserved the following certified questions of law challenging the validity of the stop of his car that led to his arrest:

> In a situation where the Arresting Officer received a tip from dispatch that a specific vehicle was driving "erratically," and the Officer located said vehicle and followed it for a distance and observed it cross the "fog line" on two (2) occasions and drift into another lane before stopping said vehicle:

-2-

1. Whether the trial court erred in denying the Defendant's Motion to Suppress the Stop based on lack of reasonable suspicion when Arresting Officer testified that Defendant's driving alone gave no indication that Defendant was driving unsafely or that Defendant was in danger.

2. Whether the trial court erred in denying the Defendant's Motion to Suppress the Stop based on lack of reasonable suspicion because Officer's testimony of the Defendant's driving diminished the reliability of the "tip" of "erratic driving."

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); State v. Jones, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Odom, 928 S.W.2d at 23. The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001). The application of the law to the facts as determined by the trial court is a question of law, which is reviewed de novo on appeal. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution and article 1, section 7 of the Tennessee Constitution protect against unreasonable searches and seizures. See State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997). An automobile stop constitutes a seizure within the meaning of these constitutional provisions. Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 450 (1990); State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993); State v. Binion, 900 S.W.2d 702, 705 (Tenn. Crim. App. 1994). The police may stop a vehicle if they have reasonable suspicion based upon specific and articulable facts that an occupant is violating or is about to violate the law. See United States v. Brignoni-Ponce, 422 U.S. 873, 880 (1975); State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992); Hughes v. State, 588 S.W.2d 296, 305 (Tenn. 1979). A determination of whether reasonable suspicion exists is a fact-intensive inquiry, and the threshold requirement for finding reasonable suspicion is lower than that required for probable cause. State v. Garcia, 123 S.W.3d 335, 344 (Tenn. 2003); United States v. Sokolow, 490 U.S. 1, 7 (1989). In determining whether an officer's reasonable suspicion is supported by specific and articulable facts, "a court must consider the totality of the circumstances - the entire picture." State v. Moore, 775 S.W.2d 372, 377 (Tenn. Crim. App. 1989).

Tennessee Code Annotated section 55-8-123(1) (2008) states that when a roadway is divided into two or more marked lanes for traffic, "a vehicle shall be driven as nearly as practicable entirely within a single lane . . . ."  Code section 55-8-143(a) states that a

> driver who intends to start, stop or turn, or partly turn from a direct line, shall first see that that movement can be made in safety, and whenever the operation of any other vehicle may be affected by such movement, shall give a signal . . . , plainly visible to the driver of the other vehicle of the intention to make such movement.

Our supreme court has stated that "'if failure to follow a perfect vector down the highway . . . was sufficient reason to suspect a person of driving while impaired, a substantial portion of the public would be subject each day to an invasion of their privacy.'"  State v. Binette, 33 S.W.3d 215, 219 (Tenn. 2000) (quoting United State v. Lyons, 7 F.3d 973, 976 (10th Cir. 1993) overruled on other grounds by United States v. Botero-Ospina, 71 F.3d 783, 786-87 (10th Cir. 1995)).  Likewise, the frequency in which "a vehicle touches the center line or drifts within . . . a lane is not dispositive.  Rather . . . a court must consider the totality of circumstances." Id.; see State v. Ann Elizabeth Martin, No. E1999-01361-CCA-R3-CD, slip op. at 7 (Tenn. Crim. App. Sept. 8, 2000) (holding that where the police merely observed a car enter into a "merge lane . . . briefly cross over the white solid line at the right shoulder of the [merge] lane, and then exit the turn lane to the left and resume travel in the right-hand lane" did not give rise to reasonable articulable suspicion).

We note that although the Defendant presents two certified questions of law, the dispositive issue before this court is whether Officer Malone had reasonable and articulable suspicion justifying the traffic stop.  Officer Malone saw a white Lexus with a dealership license plate matching the description of a car seen driving erratically.  Although the dispatch information only directed the officer's attention to a particular car on the road, the information did not provide him with reasonable suspicion justifying a traffic stop.   The officer, though, followed behind the car and saw it cross the "fog line" twice and move into the middle lane, driving on top of the broken white line while other cars were nearby without signaling.  The officer remembered the Defendant attempting to change lanes.  We note that Officer Malone's subjective belief in the Defendant's ability to drive is irrelevant in determining whether reasonable suspicion or probable cause existed at the time of the traffic stop.  See  State v. Watson, 354 S.W.3d 324, 329 (Tenn. Crim. App. 2011) (citing Whren v. United States, 517 U.S. 806, 813-15 (1996)).

This court has concluded that driving on the white line of a roadway does not, without more, give rise to reasonable suspicion to initiate a traffic stop.  State v. Smith, 21 S.W.3d

251, 258 (Tenn. Crim. App. 1999). This court, though, has concluded that driving on the white line could support a finding of reasonable suspicion when there is also evidence of erratic driving, weaving, or creating a hazard to others on the road. Id. This court has upheld a traffic stop based on reasonable and articulable suspicion when the police received a complaint about a red Ford Ranger driving recklessly and an officer observed the truck cross the center line once and the fog line once over the course of three-quarters of a mile. See State v. Wanda Joyce Smith, No. 02C01-9811-CC-00342, slip op. at 2 (Tenn. Crim. App. July 22, 1999), perm. app. denied (Tenn. Feb. 7, 2000).

We conclude that reasonable suspicion existed to stop the Defendant based on the officer's observations of the car. See Smith, 21 S.W.3d at 258; see also Watson, 354 S.W.3d at 331 (holding that crossing the yellow line once and the fog line twice created probable cause to initiate a traffic stop). The Defendant crossed the fog line twice and attempted to change lanes without signaling while other drivers were on the road. The Defendant violated Tennessee Code Annotated sections 55-8-123(1) and 55-8-143(a), which gave the officer probable cause to initiate a traffic stop. See State v. Vineyard, 958 S.W.2d 730, 736 (Tenn. 1997) (holding that a violation of the traffic law "constitutes probable cause justifying" a traffic stop). The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE